UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

C.P., a minor, by and
through his next friends,
FIDEL PEREZ, and AIDA C.
PEREZ,

      Plaintiffs,

v.                                    Case No: 2:15-cv-238-FtM-29CM

COLLIER COUNTY, JAMES
DRISCOLL, individually and
in his official capacity,
ALAN FLANAGAN, individually
and in his official
capacity, and KEVIN RAMBOSK,
individually and in his
official capacity,

      Defendants.

---

**OPINION AND ORDER**

This matter comes before the Court on review of defendant Sheriff Rambosk's Motion to Dismiss Counts XIII and XIV (Doc. #10), defendant Collier County's Motion to Dismiss (Doc. #11), and defendants Driscoll and Flanagan's Motion to Dismiss Counts I, II, III, IV, V, VI, VII, VIII, IX, and X, and to Strike Punitive Damages (Doc. #12), all filed on June 15, 2015. Plaintiff filed Responses to each Motion to Dismiss (Docs. ##16-18) on June 22, 2015.

**I.**

Plaintiff's Complaint (Doc. #1) contains the following allegations:  Plaintiff ("C.P") is a disabled child, diagnosed with mild retardation and autism.  (Id. ¶ 6.)  On December 15, 2013, plaintiff was waiting outside of his home in Collier County, Florida for his father to come home from work in order to do some holiday decorating.  (Id. ¶ 13.)  At approximately 6:46 p.m., the Collier County Sheriff's Office received a call regarding a "suspicious person" and, in response, dispatched defendants Flanagan and Driscoll.  (Id. ¶ 15.)  The caller warned the police as to the "suspicious person's" mental capacity, specifically stating that the individual was a "slow kid that lives in my neighborhood." (Id. ¶ 16.)

Upon arrival, Flanagan and Driscoll located an individual matching the suspect's description, later identified as the plaintiff.  (Id. ¶ 17.)  Flanagan and Driscoll proceeded to approach the plaintiff, and asked "what's going on here?  Do you live here?" (Id. ¶ 18.)  Acting out of fear, plaintiff began to retreat from Flanagan and Driscoll.  (Id. ¶ 20.)  As plaintiff began to retreat, Driscoll grabbed plaintiff's right shoulder area and put his left leg on plaintiff's left side, then proceeded to perform a takedown maneuver.  (Id.)  Flanagan then deployed his Taser.  (Id. ¶ 21.)  Plaintiff allegedly did not react to the Taser, so both Flanagan and Driscoll deployed their Tasers on

plaintiff for at least six cycles.  (Id.)  Driscoll then grabbed plaintiff and pushed him onto the ground, and both Flanagan and Driscoll proceeded to strike plaintiff with their aluminum flashlights and their fists.  (Id. ¶¶ 22-24.)  Driscoll deployed his Taser on plaintiff one more time for at least four cycles.  (Id. ¶ 25.)  Flanagan and Driscoll then handcuffed plaintiff.  (Id. ¶ 26.)  Emergency Medical Services arrived to the scene of the incident to treat plaintiff for his injuries.  (Id. ¶ 27.)

Following the incident, Flanagan and Driscoll filled out several reports charging plaintiff with battery on a law enforcement officer, resisting an officer with violence, and resisting an officer without violence.  (Id. ¶ 28.)  As a result of Flanagan and Driscoll's reports, juvenile delinquency charges were brought against plaintiff in the Circuit Court for the Twentieth Judicial Circuit in and for Collier County, Florida, case number 13-000826CJ-(CHG).  (Id. ¶ 29.)  These charges were eventually dismissed because plaintiff was not competent and his competency could not be restored.  (Id. ¶ 48.)

Plaintiff filed a fourteen-count Complaint against Collier County, James Driscoll in his individual and official capacities, Alan Flanagan in his individual and official capacities, and Sheriff Kevin Rambosk in his individual and official capacities. (Doc. #1.)  Plaintiff's Complaint contains the following counts: Excessive Force in violation of the Fourth and Fourteenth

Amendments under 42 U.S.C. § 1983 against Driscoll and Flanagan (Counts I and II); Malicious Prosecution in violation of state law and the Fourth Amendment pursuant to 42 U.S.C. § 1983 against Driscoll and Flanagan (Counts III and IV); state law claims of False Arrest/False Imprisonment (Counts V and VI), Battery (Counts VII and VIII), and Intentional Infliction of Emotional Distress (Counts IX and X) against Driscoll and Flanagan; Governmental Entity Liability under 42 U.S.C. § 1983 against Collier County (Count XI); Governmental Entity Liability for Failure to Train or Supervise under 42 U.S.C. § 1983 against Collier County (Count XII); Supervisory Liability for Failure to Correct under 42 U.S.C. § 1983 against Sheriff Rambosk (Count XIII); and Supervisory Liability for Failure to Train under 42 U.S.C. § 1983 against Sheriff Rambosk (Count XIV). (Id.)

Defendants Driscoll and Flanagan filed a partial Answer and defenses to plaintiff's Complaint (Doc. #13) on June 15, 2015, responding to the allegations against them in their individual capacities as to Counts I, II, V, VI, VII, and VIII. (Id.) They move to dismiss the remainder of the Complaint. (Doc. #12.) The other defendants move to dismiss all counts against them. (Docs. ## 10, 11.)

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing

4

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011)(citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume

their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

**III.**

**A. Counts I and II**

Counts I and II allege claims against Driscoll and Flanagan in their individual and official capacities under 42 U.S.C. § 1983 for excessive force in violation of the Fourth and Fourteenth Amendments. (Doc. #1, pp. 9-11.)  Driscoll and Flanagan move to dismiss Counts I and II because (1) the official capacity claims are duplicative and redundant of claims brought against the sheriff in his official capacity and (2) the facts alleged do not support a Fourteenth Amendment claim in either their individual or official capacities. (Doc. # 12, pp. 4-6.)  These defendants also move to strike demands for punitive damages against them in their official capacities. (<u>Id.</u>)

**(1)   Official Capacity Claims**

Section 1983 suits against officers in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent," not against the officer individually.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) (quoting <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 n.55 (1978)).  <u>See</u> <u>also</u> <u>Penley v. Eslinger</u>, 605 F.3d 843, 854-55 (11th Cir. 2010).  As long as the entity received notice and the opportunity to respond, an official capacity suit imposes

6

liability only on the entity.  Graham, 473 U.S. at 166; Brandon v. Holt, 469 U.S. 464, 471-72 (1985).

Only those officials who have final policymaking authority can render an entity liable under Section 1983. Hill v. Clifton, 74 F.3d 1150, 1152 (11th Cir. 1996). "[T]he mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority. Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review." Mandel v. Doe, 888 F.2d 783, 792 (11th Cir. 1989).  In Florida, a deputy sheriff does not possess final policymaking authority in connection with seizures or arrests. Brown v. Neumann, 188 F.3d 1289, 1290-91 (11th Cir. 1999).  Thus, official capacity suits against a deputy sheriff are simply another way of alleging claims against the Sheriff in his official capacity, which in turn is effectively a suit against the governmental entity the sheriff represents.  Adcock v. Baca, 157 F. App'x 118, 119 (11th Cir. 2005); Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1115 (11th Cir. 2005). Which entity or entities become liable is determined under principles set forth in McMillian v. Monroe County, 520 U.S. 781 (1997) and its progeny.

Plaintiff agrees that a suit against an individual in his official capacity is the functional equivalent of a suit against the government entity the official represents. (Doc. #18, p. 7.) Here, both Collier County and Sheriff Rambosk in his official capacity have been named as section 1983 defendants. (See Doc. #1, pp. 21-28.) The Court finds that the official capacity claims against Driscoll and Flanagan are duplicative and redundant of the claims against the sheriff in his official capacity and/or the County. Leaving such official capacity claims against the deputies only creates the possibility of confusing a jury, Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991), and serves no proper purpose. Accordingly, the claims in Counts I and II against Driscoll and Flanagan in their official capacities are dismissed without prejudice.

**(2)   Fourteenth Amendment Claims**

Claims alleging excessive force in the course of making an arrest, investigatory stop, or other seizure of a person are governed by the Fourth Amendment. Albright v. Oliver, 510 U.S. 266 (1994); Graham v. Connor, 490 U.S. 386, 388 (1989); Salvato v. Miley, 790 F.3d 1286, 1293 (11th Cir. 2015). Claims regarding excessive force during a subsequent pretrial detention are governed by the Fourteenth Amendment. Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996). While "[t]he precise point at which a seizure ends . . . and at which pretrial detention begins

. . . is not settled in [the Eleventh] Circuit," <u>Hicks v. Moore</u>, 422 F.3d 1246, 1253 n.7 (11th Cir. 2005), the facts in the Complaint clearly do not implicate the Fourteenth Amendment.[1] The allegations of excessive force in the Complaint relate solely to excessive force during the investigatory stop/seizure and arrest of the plaintiff. Each allegation of excessive force in plaintiff's Complaint occurred before plaintiff was handcuffed. (Doc. #1, ¶¶ 12-29.) The Complaint does not contain any allegations of excessive force during a period of even arguable pretrial detention. Because the claims are premised on excessive force at the time of seizure and arrest, the Fourth Amendment, not the Fourteenth Amendment, applies. <u>Jordan v. Mosley</u>, 298 F. App'x 803, 805 (11th Cir. 2008).

This is not an issue of pleading alternative legal theories, but of pleading a plausible legal claim. Counts I and II fail to plausibly allege excessive force in violation of the Fourteenth Amendment and are dismissed without prejudice as to Driscoll and Flanagan in their individual and official capacities.

---

[1] In <u>Hicks</u>, the Court examined a situation involving alleged constitutional violations that occurred after the plaintiff was arrested, but before the booking process was complete. 422 F.3d at 1253 n.7. The Eleventh Circuit presumed that these actions occurred during the seizure and analyzed the claims under the Fourth Amendment.

### (3)    Punitive Damages

Defendants assert that plaintiff's demand for punitive damages should be stricken as to Driscoll and Flanagan in their official capacities because punitive damages are not available in official capacity section 1983 suits against government officials. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Colvin v. McDougall, 62 F.3d 1316, 1319 (11th Cir. 1995). As previously held, Counts I and II are dismissed as to Driscoll and Flanagan in their official capacities, and therefore the motion to strike punitive damages is granted. Alternatively, punitive damages are stricken against these defendants in their official capacities pursuant to City of Newport and Colvin.

### B. Counts III and IV

Counts III and IV allege claims against Driscoll and Flanagan for malicious prosecution in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 and under state law. (Doc. #1, pp. 11-14.) Defendants move to dismiss Counts III and IV because (1) the section 1983 official capacity claims asserted against Driscoll and Flanagan are duplicative of the official capacity claims against the sheriff, (2) plaintiff has failed to state a cause of action for malicious prosecution under section 1983, and (3) plaintiff cannot maintain a state law claim for malicious prosecution against Driscoll and Flanagan in their official capacities. (Doc. #12, pp. 6-10.) Defendants also seek to strike

the requested punitive damages in the official capacity claims. (Id.)

**(1)   § 1983 Official Capacity Malicious Prosecution Claims**

As discussed above, plaintiff's claims against Driscoll and Flanagan in their official capacities under section 1983 are duplicative of the official capacity claims against the sheriff and/or County.  The official capacity claims in Counts III and IV are dismissed without prejudice.

**(2)   § 1983 Individual Capacity Malicious Prosecution Claims**

Defendants assert that plaintiff has failed to state a plausible claim for malicious prosecution under section 1983 against Driscoll and Flanagan in their individual capacities.  To state a section 1983 malicious prosecution claim, plaintiff must allege: "(1) the elements of the common law tort of malicious prosecution, and (2) a violation of [the plaintiff's] Fourth Amendment right to be free from unreasonable seizures." Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004) (citing Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003)).  Defendants do not challenge the sufficiency of the allegations as to the first prong.[2]  Defendants assert, however, that plaintiff has failed to

---

[2]The six elements of malicious prosecution under Florida law are (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an

sufficiently allege the second prong of the section 1983 malicious prosecution claim, i.e., a constitutional violation in relation to the prosecution.

The Eleventh Circuit has summarized the requirements of this prong as follows:

> Kingsland bears the burden of proving that she was seized in relation to the prosecution, in violation of her constitutional rights. In the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted. Thus, the plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment, and was not one that arose from malicious prosecution as opposed to false arrest.

Id. at 1235 (citation omitted) (internal quotation marks omitted). "Thus, in addition to the common law elements, a § 1983 plaintiff must prove that he was 'seized in relation to the prosecution, in violation of [his] constitutional rights.'" Donley v. City of Morrow, 601 F. App'x 805, 813 (11th Cir. 2015) (alteration in original).

Counts III and IV fail to plausibly allege a constitutional deprivation in relation to the prosecution independent of the initial Fourth Amendment violation. The only constitutional

---

absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding. Kingsland, 382 F.3d at 1234 (citing Durkin v. Davis, 814 So.2d 1246, 1248 (Fla. 2d DCA 2002)).

violations alleged within plaintiff's complaint relate to plaintiff's seizure and warrantless arrest. As these occurred prior to the beginning of the judicial proceeding, they are not related to the prosecution for purposes of section 1983 malicious prosecution claims. Kingsland, 382 F.3d at 1235-36. The only other allegation by plaintiff of a constitutional violation is conclusory and not sufficient to state a claim for relief for section 1983 malicious prosecution. (Doc. #1, ¶ 53: "As a direct and proximate result of the original proceeding . . . [plaintiff] was deprived of his Constitutional rights . . . .").

In his response to the motion, plaintiff asserts that his forced competency evaluations constitute a sufficient constitutional injury related to the prosecution and distinguishes his case from Kingsland. (Doc. #18, p. 13.) Normal conditions of pretrial release, such as bond and a summons to appear, do not constitute a seizure violative of the Fourth Amendment, "barring some significant, ongoing deprivation of liberty, such as restriction on the defendant's right to travel interstate." Kingsland, 382 F.3d at 1236. See also Bloom v. Alvereze, 498 F. App'x 867, 875 (11th Cir. 2012). The Complaint makes no allegations which plausibly suggest that the competency evaluations would take this case outside the normal rule. Accordingly, plaintiff has failed to state a claim for section 1983 malicious prosecution against Driscoll and Flanagan in their

individual capacities.   Counts III and IV are dismissed without prejudice as to Driscoll and Flanagan in their individual capacities.

### (3) State Law Official Capacity Malicious Prosecution Claims

Defendants assert that the Complaint fails to allege a state law claim against them in their official capacities for malicious prosecution and seek to strike the punitive damages request. Plaintiff did not address this issue in his response. (See Doc. #18.)

Defendants' argument is not that these state law official capacity claims are redundant (as are the section 1983 official capacity claims), but rather that they are barred by Fla. Stat. § 768.28(9)(a).  Two portions of the statute are relevant.  First, as to personal capacity claims, the statute provides:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a).  Second, as to official capacity claims, the statute provides:

> . . . The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of

> such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Id. As was recently stated, this means

> an officer is entitled to immunity in his or her individual capacity for conduct taken within the scope of his or her employment and not done with a "malicious purpose or in a manner exhibiting wanton and willful disregard for human rights, safety, or property," and this type of claim is more properly brought against an officer in his or her official capacity, i.e., against the government entity of which the officer is an employee. On the other hand, if the officer acted with "bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard for human rights, safety, or property," the action is barred against the governmental entity and may only be brought against the officer individually.

Anderson v. City of Groveland, No. 5:15-CV-26-OC-30PRL, 2015 WL 6704516, at *6 (M.D. Fla. Nov. 2, 2015) (citations omitted).

Plaintiff has brought state tort claims for malicious prosecution against Driscoll and Flanagan in their individual and official capacities. Not surprisingly, Florida law is clear that malice is a required element to a malicious prosecution claim. Miami-Dade County v. Asad, 78 So. 3d 660, 664 (Fla. 3d DCA 2012). Because there can be no claim for malicious prosecution without a showing of malice, and because Fla. Stat. § 768.28(9)(a) bars

claims against the entity or officials acting in their official capacities for conduct committed with malice, Florida law is also clear that there can be no claim for malicious prosecution against state agencies or subdivisions.   Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1330 (11th Cir. 2015); Fla. Dept. of Envtl. Prot. v. Green, 951 So. 2d 918, 919 (Fla. 4th DCA 2007); Johnson v. State Dep't of Health and Rehab. Servs., 695 So.2d 927, 930 (Fla. 2d DCA 1997); Sebring Utils. Comm'n v. Sicher, 509 So. 2d 968, 970 (Fla. 2d DCA 1987).   Accordingly, plaintiff's state law claims for malicious prosecution against Driscoll and Flanagan in their official capacities are dismissed with prejudice.   The motion to strike punitive damages as to claims against Driscoll and Flanagan in their official capacities is granted.

In sum, the only claims that survive the motion to dismiss as to Counts III and IV are the state law claims for malicious prosecution against Driscoll and Flanagan in their individual capacities.

**C. Counts V and VI**

Counts V and VI allege claims for false arrest/false imprisonment under Florida law against Driscoll and Flanagan (Doc. #1, pp. 14-17) apparently in both their individual and official capacities. (Id. ¶¶ 70, 79.)   Defendants move to dismiss the official capacity claims and to strike the requests for punitive damages against the defendants in their official capacities, on

the same bases as Counts III and IV. (Doc. #12, pp. 10-11.) Plaintiff has made no response to these arguments. (Doc. #18.)

False arrest is defined as the unlawful restraint of a person against that person's will. Willingham v. City of Orlando, 929 So. 2d 43, 48 (Fla. 5th DCA 2006). "The essential elements of a cause of action for false imprisonment include: (1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or 'color of authority'; and (4) which is unreasonable and unwarranted under the circumstances." Mathis v. Coats, 24 So. 3d 1284, 1289 (Fla. 2d DCA 2010) (citations omitted). "False arrest and false imprisonment are closely related, but false imprisonment is a broader common law tort; false arrest is only one of several methods of committing false imprisonment." Id.

Here, plaintiff is attempting to hold Driscoll and Flanagan liable in their individual capacities by alleging false arrest with "bad faith, with a malicious purpose, or in a manner exhibiting wanton or willful disregard." (Doc. #1, ¶¶ 69, 78); see Fla. Stat. 768.28(9)(a). Alternatively, plaintiff attempts to hold the County liable for Driscoll and Flanagan's actions in their official capacities by arguing alternatively that Driscoll and Flanagan did not act in bad faith, with a malicious purpose, or in a manner exhibiting wanton or willful disregard. (Doc. #1, ¶¶ 70, 79); see Fla. Stat. 768.28(9)(a). While it is an intentional tort,

a claim of false arrest/false imprisonment does not necessarily require plaintiff to prove malice or wanton or willful disregard. See Richardson v. City of Pompano Beach, 511 So. 2d 1121 (Fla. 4th DCA 1987). Therefore, alternative pleading is appropriate. Fed. R. Civ. P. 8(d)(2). Additionally, Florida courts have held that there is no sovereign immunity for false arrest. Jibory v. City of Jacksonville, 920 So. 2d 666, 667 (Fla. 1st DCA 2006) (citations omitted).

Accordingly, defendants' Motion to Dismiss Counts V and VI as to Driscoll and Flanagan in their official capacities is denied. To the extent that that plaintiff attempts to hold Driscoll and Flanagan liable for false imprisonment/false arrest in their official capacities, plaintiff's requests for punitive damages are stricken. Fla. Stat. § 768.28(5).

### D. Counts VII and VIII

Counts VII and VIII allege claims for battery under Florida law against Driscoll and Flanagan. (Doc. #1, pp. 17-19.) Again, plaintiff is alleging alternative liability against Driscoll and Flanagan in their individual and official capacities. (Id. ¶¶ 86, 93.) Defendants move to dismiss these claims on the basis that Florida law provides for mutually exclusive liability between government employees and their employer and to strike the requests for punitive damages against the defendants in their official

capacities.   (Doc. #12, pp. 11-13.)   Plaintiff filed no response
to these arguments. (Doc. #18.)

     For the reasons discussed previously, defendants' Motion to
Dismiss Counts VII and VIII as to Driscoll and Flanagan in their
official capacities is denied.   To the extent that that plaintiff
attempts to hold Driscoll and Flanagan liable for battery in their
official capacities, plaintiff's claims for punitive damages are
stricken. Fla. Stat. § 768.28(5).

### E. Counts IX and X

     Counts IX and X allege claims for intentional infliction of
emotional   distress   under   Florida   law   against   Driscoll   and
Flanagan, apparently in their official and individual capacities.
(Doc. #1, pp. 19-21.)   Defendants move to dismiss Counts IX and X
on the basis that (1) Florida law provides for mutually exclusive
liability   between   a   governmental   employee   in   their   individual
capacity and their employer, and any attempt to hold their employer
liable fails as a matter of law, and (2) plaintiff has failed to
allege   sufficient   facts   to   state   claims   against   Driscoll   and
Flanagan in their individual capacities.   (Doc. #12, pp. 13-14.)
Driscoll and Flanagan also move to strike demands for punitive
damages against them in their official capacities. (<u>Id.</u>)

     Florida first recognized the tort of intentional infliction
of emotional distress in <u>Metro. Life Ins. Co. v. McCarson</u>, 467 So.
2d 277 (Fla. 1985).   In order to state a claim for intentional

infliction of emotional distress under Florida law, a plaintiff must plausibly allege: "(1) deliberate or reckless infliction of mental suffering, (2) outrageous conduct that (3) caused the emotional distress, and (4) that the distress was severe." Tillman v. Orange County, 519 F. App'x 632, 636 (11th Cir. 2013) (citation omitted).  For conduct to be sufficiently outrageous, it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Lopez v. Target Corp., 676 F.3d 1230, 1235–36 (11th Cir. 2012) (quoting Restatement (Second) of Torts § 46 cmt. d (Am. Law Inst. 1965)).  Whether the alleged conduct satisfies this high standard is a legal question "for the court to decide as a matter of law." Vance v. S. Bell Tel. & Tel. Co., 983 F.2d 1573, 1575 n.7 (11th Cir. 1993) (quoting Baker v. Fla. Nat'l Bank, 559 So. 2d 284, 287 (Fla. 4th DCA 1990)).

### (1)   Official Capacity Claims

Defendants contend that Counts IX and X cannot be brought against Driscoll and Flanagan in their official capacities because the Sheriff/County cannot be sued for IIED.  The Court agrees.

Florida Statute § 768.28(9)(a) allows tort claims against a governmental entity "unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton or willful disregard of human rights, safety, or property." The Eleventh Circuit affirmed the dismissal of an intentional

infliction of emotional distress claim against a government entity because the entity could not be liable for the willful and wanton actions of its employees under Fla. Stat. § 768.28(9). <u>Tillman</u>, 519 F. App'x at 636 (citing <u>Ford v. Rowland</u>, 562 So. 2d 731, 734 (Fla 5th DCA 1990)).   The "reckless" requirement of the first element of an IIED claim constitutes willful and wanton conduct. <u>Samedi v. Miami-Dade County</u>, 134 F. Supp. 2d 1320, 1354 (S.D. Fla. 2001).   Therefore, Fla. Stat. § 768.28(9)(a) shields governmental entities from causes of action for IIED, as IIED requires proof of willful and wanton conduct.   Indeed, these counts specifically plead that defendants acted with malice. (Doc. #1, ¶¶ 97, 102.) Accordingly, plaintiff's claims in Counts IX and X against Driscoll and Flanagan in their official capacities are dismissed with prejudice.

### (2)   Individual Capacity Claims

Defendants contend that plaintiff's IIED claims against Driscoll and Flanagan in their individual capacities should be dismissed because plaintiff has failed to allege sufficient facts to support the claim.   Specifically, defendant argue that the counts are devoid of factual support to entitle the Court to reasonably infer that defendants' conduct was sufficiently outrageous to constitute IIED.

Florida courts have a very high standard when evaluating whether conduct alleged is sufficiently outrageous to state an

IIED claim.  The question of whether conduct is "outrageous" is a question of law, not a question of fact. Liberty Mut. Ins. Co. v. Steadman, 968 So.2d 592, 595 (Fla. 2d DCA 2007).  Plaintiff has alleged that Driscoll and Flanagan's conduct was intentional, in bad faith, and with a malicious purpose (Doc. #1, ¶ 97); that Driscoll and Flanagan were on notice of the plaintiff's disability/mental incapacity (Id. ¶ 98); that Driscoll and Flanagan beat, struck, slapped, Tased, and hit plaintiff with a flashlight and that said conduct caused plaintiff severe emotional distress (Id. ¶¶ 97-99); and that the officers covered-up their misconduct in their written reports. (Id. ¶ 28).  While the acts of beating, striking, slapping, Tasering, and hitting an individual with a flashlight and covering up those events might not always exceed all bounds of decency, the Court holds that there is a plausible claim alleged here. Tillman, 519 F. App'x at 636-37; Steadman, 968 So.2d at 595.

Accordingly, defendants' Motion to Dismiss Counts IX and X is granted as to the claims against Driscoll and Flanagan in their official capacities and denied as to the claims against Driscoll and Flanagan in their individual capacities.

**F. Counts XI and XII**

Counts XI and XII assert claims against Collier County under 42 U.S.C. § 1983 based on the conduct of the sheriff and his deputies. (Doc. #1, pp. 21-25.)  The County moves to dismiss these

claims on the basis that the County is not legally responsible for the law enforcement functions of the sheriff under federal law. (Doc. #11, pp. 2-3.)

"Section 1983 creates a private cause of action for deprivations of federal rights by persons acting under color of state law." Laster v. City of Tampa Police Dept., 575 F. App'x 869, 872 (11th Cir. 2014) (citing 42 U.S.C. § 1983). "Persons" include individuals and municipalities and other local-government units, Monell, 436 U.S. at 690-91, but do not include a state or an arm of a state. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

Determining the entity a Florida sheriff represents in a section 1983 official capacity suit has proven problematic. The choices seem to be that the sheriff can represent the Sheriff's Office as an autonomous unit of county government, or the county, or the State of Florida, or some combination.

Initially, the Eleventh Circuit found that the county was liable for a section 1983 claim against the sheriff for performing functions within his absolute authority. Lucas v. O'Loughlin, 831 F.2d 232 (11th Cir. 1987).[3]  In 1997, the Supreme Court created a

---

[3]In a related context, the Eleventh Circuit found a Florida sheriff to be a county official, not an arm of the state, for Eleventh Amendment purposes. Hufford v. Rodgers, 912 F.2d 1338, 1341-42 (11th Cir. 1990); Ortego v. Schramm, 922 F.2d 684, 694 (11th Cir. 1991); Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991); Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'r, 405 F.3d

more nuanced function-by-function approach for determining whether a county sheriff was a state or county policymaker when engaging in law enforcement activities.  McMillian, 520 U.S. 781.  The Supreme Court held that in determining whether a sheriff is a state or county policymaker for purposes of a section 1983 action, "the question is not whether [the sheriff] acts for [the state] or [the county] in some categorical, 'all or nothing' manner," but rather whether the sheriff is acting for the state "in a particular area, or on a particular issue."  Id. at 785 (holding that Alabama sheriff was policymaker for the state, not for the county).

In 1999, the Eleventh Circuit noted that its prior decisions had not been entirely consistent in "whether the relevant entity in an official-capacity suit against a sheriff in Florida is the county or the Sheriff's Department (as a unit operating autonomously from the County)," Brown, 188 F.3d at 1290 n.2, and declined to determine the issue in that case.  Since Brown and McMillian, the Eleventh Circuit case law states in summary fashion that in Florida the county is the governmental entity financially liable in section 1983 official capacity suits against a Florida

---

1298 (11th Cir. 2005).  The Florida appellate court agreed that a county sheriff was a county official, not the arm of the state. Jenne v. Maranto, 825 So. 2d 409, 416 (Fla. 4th DCA 2002).  The Eleventh Amendment issue is different than the section 1983 issue, asking whether the sheriff in his official capacity is an arm of the state, not whether the sheriff is a "person" under section 1983.

sheriff. See Adcock, 157 F. App'x at 119 ("When, as here, the defendant in a § 1983 civil rights action is the county sheriff, the suit is effectively an action against the governmental entity he represents-in this case, Polk County."); Cook, 402 F.3d at 1115 ("When, as here, the defendant is the county sheriff, the [§ 1983] suit is effectively an action against the governmental entity he represents-in this case, Monroe County."). Accordingly, the Court denies Collier County's Motion to Dismiss.

### G. Counts XIII and XIV

Counts XIII and XIV assert claims of supervisory liability under 42 U.S.C. § 1983 against Sheriff Rambosk in both his individual and official capacities for failure to correct and failure to train. (Doc. #1, pp. 25-28.)  Defendant Rambosk moves to dismiss Counts XIII and XIV on the basis that plaintiff's complaint fails to plausibly allege claims under 42 U.S.C. § 1983 against Sheriff Rambosk in either his official or individual capacity.  (Doc. #10.)  Rambosk also moves to strike plaintiff's demand for punitive damages.  (Id.)

### (1)  Official Capacity Claims

As discussed in detail previously, suits against the county sheriff are essentially suits against the governmental entity he represents—in this case, either Collier County or arguably the sheriff as an entity. Cook, 402 F.2d at 1115; Brown, 188 F.3d at 1290 n.2.  Because it is plausible that either the Collier County

or the sheriff as an autonomous unit may be liable, Sheriff
Rambosk's Motion to Dismiss claims against him in his official
capacity is denied.

**(2)  Individual Capacity Claims**

"The standard by which a supervisor is held liable in [his]
individual capacity for the actions of a subordinate is extremely
rigorous." Cottone v. Jenne, 326 F.3d 1352, 1360-61 (11th Cir.
2003).

> [S]upervisory liability under § 1983 occurs either when
> the supervisor personally participates in the alleged
> unconstitutional conduct or when there is a causal
> connection between the actions of a supervising official
> and the alleged constitutional deprivation. The
> necessary causal connection can be established "when a
> history of widespread abuse puts the responsible
> supervisor on notice of the need to correct the alleged
> deprivation, and he fails to do so." Alternatively, the
> causal connection may be established when a supervisor's
> "'custom or policy . . . result[s] in deliberate
> indifference to constitutional rights'" or when facts
> support "an inference that the supervisor directed the
> subordinates to act unlawfully or knew that the
> subordinates would act unlawfully and failed to stop
> them from doing so."

Id. (alterations in original) (citations omitted) (internal
quotation marks omitted). Plaintiff has not alleged that Rambosk
was directly involved in the constitutional violations alleged in
plaintiff's Complaint. Plaintiff has alleged "a history of
widespread abuse . . . as to the improper and unjustified use of
force and deployment of 'tasers,'" (Doc. #1, ¶ 123), and
"[n]umerous incidents, including prior lawsuits" (Id. ¶ 124)

regarding "prior unconstitutional conduct similar to . . . violations of Plaintiff's rights in this case," (Id. ¶ 116). Further, plaintiff alleges that the prior incidents and history of widespread abuse put Rambosk on notice and Rambosk failed to take any action, causing plaintiff to be deprived of his constitutional rights. (Id. ¶ 125.)  The Court finds these allegations sufficient to state a claim against Rambosk in his individual capacity. Rambosk's Motion to Dismiss claims against him in his individual capacity is denied.

**(3)  Punitive Damages**

Defendant Rambosk asserts that plaintiff cannot recover punitive damages against him in his official capacity.  The Court agrees.  City of Newport, 453 U.S. at 271; Colvin, 62 F.3d at 1319.  Accordingly, plaintiff's demand for punitive damages against Sheriff Rambosk in his official capacity is stricken.

Accordingly, it is now

**ORDERED:**

1. Defendants Driscoll and Flanagan's Motion to Dismiss Counts I, II, III, IV, V, VI, VII, VIII, IX and X  (Doc. #12) is **GRANTED in part and DENIED in part as follows:**

    a. Counts I and II are dismissed without prejudice as to Driscoll and Flanagan in their official capacities;

    b. Counts I and II are dismissed without prejudice as to Driscoll and Flanagan in their individual capacities

27

as to the Fourteenth Amendment claims;

c. The § 1983 claims in Counts III and IV are dismissed without prejudice as to Driscoll and Flanagan in their official and individual capacities;

d. The state law claims in Counts III and IV are dismissed with prejudice as to Driscoll and Flanagan in their official capacities;

e. Counts IX and X against Driscoll and Flanagan in their official capacities are dismissed with prejudice;

f. Plaintiff's demands for punitive damages in Counts I, II, III, IV, V, VI, VII, and VIII against Driscoll and Flanagan in their official capacities are stricken;

g. The motion is otherwise denied.

2. Collier County's Motion to Dismiss (Doc. #11) is **DENIED.**

3. Sheriff Rambosk's Motion to Dismiss Counts XIII and XIV (Doc. #10) is **GRANTED in part and DENIED in part.** Plaintiff's claim for punitive damages is stricken as to Sheriff Rambosk in his official capacity.  The motion is otherwise denied.

4. Defendants shall have **FOURTEEN (14) DAYS** from the date of this Order to file a responsive pleading.

**DONE AND ORDERED** at Fort Myers, Florida, this __18th__ day of November, 2015.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record